All right, please proceed. Okay. This is an ERISA long-term disability case. Could you introduce yourself for the record, please? Oh, I'm sorry. I thought I had. Charles Fleischman, appearing for the plaintiff, Mr. McCool, and the appellant. Mr. McCool had a claim with SIGNA, or LENA, for long-term disability benefits, which was denied. The standard of review in the case is de novo. The case has two basic issues. The first one is, what is the law regarding how long a person has to be able to sit minimally to perform a sedentary job? And the second one is, what are the facts of this case? Do they support his claim, or do they support the opposition? So, if I could interrupt you just a minute, Mr. Fleischman. There is no definition of sedentary in this policy, right? No, I guess not. No. So the district court looked to other case law, correct? I don't know that he did, no. Well, I looked to Armani, I thought. Well, Armani, yes. Yes. Okay. I mean, Armani says that an employee who cannot sit for more than four hours in an eight-hour workday cannot perform sedentary work that requires sitting most of the time. Isn't that what it does? Yes. So, where in Armani does it suggest that an individual needs to be able to sit for six to eight hours to qualify? Well, just before it discusses Armani's four hours, I believe it cites a number of cases from various jurisdictions that says that the general rule or many jurisdictions. But we're not worried about other jurisdictions, sir. We're worried about this one. And that's why Armani is kind of controlling for me, is it not? No. Why not? Well, it's not controlling because in Armani, he could only sit for four hours. So the judge. Just a minute. Just a minute. I read you what it said in Armani. What other case is there that overrules Armani? There's no need to overrule Armani. Armani is good law. Okay. Okay. That requires sitting most of the time is the rule, right? No. That's the rule we have to apply. That's what Armani held. If I could explain, I would attempt to explain to you why I disagree. I understand. I just gave you the rule, and I'm trying to figure out why it isn't the rule. I'm reading right from Armani. Okay. I'll let you talk. Okay. Mr. Armani could only sit for four hours. The Ninth Circuit. I was the attorney for Mr. Armani at the time. The Ninth Circuit said, or your court said, that in many jurisdictions, it's six hours. Armani can't sit for four hours. If he can't sit for four hours, he surely can't perform a sedentary job. It didn't say that you have to be able to. Anybody that can sit for over four hours can perform a sedentary job. It said that Mr. Armani, since he can only sit for four hours, obviously can't perform a sedentary job because most sedentary jobs require six hours. Okay. I understand your idea of what it says. Did the district court clearly err in finding that your client could sit for more than four hours in an eight-hour day? Yes. He did. Why? Well, because all of the doctors— First of all, what's my standard of review? De Novo. You have to find that the— Well, now, just a minute. It's De Novo as it relates to what I have to do in this particular matter as to putting this law together and doing all that. But when it comes to looking at the facts of the case— Abuse of discretion. You're right. That's your standard. Right. Clear air. Yes. That's your standard. And you have the burden of proof, right? Absolutely. Okay. Then why is it clear air here? Well, in this case, you've got the two examining doctors, Dr. Grossman and Dr. Larson, who found that the man could only sit occasionally and frequently, which means between zero and five and a half hours in an eight-hour day. Okay? Everybody else—well, there are no—Dr.—what was his name? Wilson. The problem comes—we're not talking about you making a great point to the jury on your side of the issue. We're talking about we have to look at the evidence that's in the case, and there's two sides on the evidence. I mean, Dr. Grossman would not respond to the questions that they had about his, or at least that's what they said, but we have two different sides. And with clear air review, if we got one side, there's no clear air. Well, one side has no—it's based on fluff. It's based on nothing. The defense. And just because they get an opinion that he can sit for a frequent amount of time, that's totally meaningless in this context, because a total frequent amount of time is between two and a half and five and a half hours in an eight-hour day, and if he has to be able to sit more than four hours, the opinion of Dr. Chong and the opinion of the functional capacity exam are no help at all. They don't—they're a 50-50 chance. That's like flipping a coin. That's not evidence. That's not substantial evidence to support a decision. That's a flip of a coin. And there is no evidence that says he can sit for more than— Dr. Grossman not responding? Yeah. Not responding to—I mean, Dr. Pietruszka wanted to have—wanted to speak with Dr. Grossman. He would not. And so I guess I'm trying to figure out what is the evidence that I would say there is clear error here? Well, that is an—the fact that Dr. Grossman didn't talk to— I'm trying to come up with why this is clear error. Give me your best shot. There is no evidence that this man can sit for more than four hours, not one shred of credible evidence. There is not any evidence at all that this man can perform any job that was found by the TSA, Lena's TSA, transferred, whatever it is, you know, for the occupation, because all they knew was that he could sit frequently. All they had was the FCE in front of them, the Functional Capacity Evaluation, that said he could sit frequently between two-and-a-half and five-and-a-half hours. Now, that is not evidence that he can sit for more than four hours. It's a range, and anywhere in that range. It's like flipping a coin. How they ever found— What's the evidence that he can't? That he can't? Well, there's all kinds of objective evidence. He's got C6, C7, radiculopathy. He's got a— But, I mean, that's just where, again, a functional capacity exam is the exam which would say, with all of that stuff, you can sit or you can't sit. What we have is Dr. Chung reviewing the records, the evaluations, the surveillance, restricted. He says two-and-a-half to five-and-a-half per day. Right. He says that the Grossman opinion is not supported, inconsistent. Pietruszka says he agrees with Chung. He didn't have any functional limitations. No functional exam was ever conducted, and Grossman won't even talk to me to tell me how he came out with whatever he was going to do. What he says. Okay, you've got a lot of questions in there, and I'd like to answer the last one first. Well, I'm not questioning. I'm just saying I'm on clear air review here, and I'm trying to review the evidence in front of me. Okay. The doctor cannot bind my client. If Dr. Grossman is not calling back Dr. Pietruszka or Dr. Chung or whoever, that can't bind my client because under Saffron v. Wells Fargo, the Ninth Circuit said that a doctor can't bind the client, give information, but he's not. My client can't force the man to call the doctor, the defendants back. But there's even another point, okay. Knowing all of this and taking all of this into consideration, okay, Dr. Chung found that my client could only sit frequently between two-and-a-half and five-and-a-half hours, which is not evidence that he can sit for more than four hours. Okay. The FCE found the same thing. Well, Dr. Blue said he could. Now, just a minute. Dr. Blue said he could perform frequent sitting, standing, walking, and manipulating, and occasional walking, bending, squatting, and reaching, right? Yeah, right. But I'll point up another. Let me make another point to you. If he can only stand and walk occasionally, which is up to two-and-a-half hours, and sitting is only four hours required, if you add them together, four and two-and-a-half, there's only six-and-a-half hours. What happens to the other hour and a half in the eight-hour day? It can't be four hours. That's all the questions I have. Would you like to save your remaining time for rebuttal? Yes, I would, Your Honor. All right. Thank you. Now, Mr. McGuire. Thank you, Your Honor. May it please the Court, good morning. My name is Dan McGuire, representing the Apelli Life Insurance Company of North America. I respectfully submit that the heart of this case rests on standard of review of this court and burden of proof in the lower court. Judge Smith will love that statement. Standard of review. You must have been reading my epitaph. Go ahead. Hopefully that's way premature, Your Honor. There are two issues presented, and the district court found, first, that the plaintiff did not sustain his burden of proof to demonstrate the inability to sit more than four hours a day so as to be deemed incapable of sedentary work under the Armani test. Second, the court found that the record as a whole did not support his inability to do sedentary work. Neither of these findings were clearly erroneous. I'd like to address the Armani issue first. The appellant's position that Armani either stands for or even allows for a requirement that a person must be able to sit for six hours to do sedentary work is unsupported. The Armani case is settled law of this circuit. It's clear, and it's well-reasoned. Now, just a minute. As you go through there, your opposition talked to us about the paragraph that is there before we get to this language that I read to him. What do you have to say to that argument? The fact is that the Armani court considered all of those other arguments not only once. Well, the Armani court considered it once, but the Ninth Circuit considered it again in Cruz Baca, and nevertheless, after reviewing all that same authority that the appellant cites here, came up with a rule of law that four hours is required, not six. So the point I was making, Your Honor, was that these arguments have already been considered and rejected by this court. The court, both in Cruz Baca and in Armani, declined to incorporate the social security definition of sedentary into ERISA. That could be because the high court in the Black & Decker v. Nord case had particularly rejected the treating physician rule, noting that social security is a different system. But in Armani, we did say that our definition matched the DOT most of the time definition, correct? That is correct, Your Honor, but the DOT and the social security are different definitions. The DOT, which is promulgated by the Department of Labor, which also promulgates the ERISA regulations, says most of the time. The social security regulations, which are promulgated by the Social Security Administration, which don't apply here, are the only ones that talk about the six hours. And even then, it talks about it as a guideline, generally, approximately six hours. So under Armani, if the plaintiff can demonstrate that he can't sit for more than four hours, then he can't do the sedentary work. But the DJ here found that the plaintiff failed to sustain that burden. And that's really the crux of evaluating the district court's opinion, is that not only are the findings reviewed for clear error, but plaintiff had the burden of proof in the lower court. What do you say to this argument that 2.5 to 5.5 is ambiguous? Well, I say, Your Honor, that it's not ambiguous. I think the only way to talk about functional capacity is in a range, and everyone does that. Social Security does that. The DOT does that. The insurance companies do that. And the reason is because functional capacity can vary from individual to individual, and based on other factors such as exercise, medication, mood, activity level, I don't think it would be accurate to describe functional capacity for a particular number of hours, and that's why the range is used. But if it could go up to 5.5, then it would exceed the four, wouldn't it? Sure. So that makes it ambiguous to know what it really says. No, I disagree with that, Your Honor, because the purpose of the district court. That's the argument. Well, I understand that's the argument, and I respectfully disagree with the argument, and here's why. First, the range is appropriate for the reasons I described. Second, the district court has the benefit of a de novo review. If that's to have any meaning, the district court has to look at all the evidence in the record and make a determination of which is better supported. Plaintiff has the burden of proof. The D.J. determined that the plaintiff did not sustain the burden of proof. Not only looking at that one range of how much can a person sit, it's 2.5 to 5.5, but also the other evidence in the record. Dr. Petrushka is saying there's no functional limitations at all. The surveillance showing that he's walking around and carrying things and moving effortlessly, he has the discretion to interpret the record as a whole, and that was the basis for his decision. So that's why I disagree with just looking at that range, isolating it. And even if we did that, if it's 2.5 to 5.5 and 4 is in the middle of that range, the D.J. has to make a call on that, and he made one. What about this argument that the doctors on whom you rely were unreliable? Well, they were. Well, I disagree with the fact they were unreliable. I mean, that's the argument. I would like you to respond. The response is twofold, Your Honor. First, the reviewing physicians have the benefit of a horizontal chronological view of all the medical information. They are able to digest everything from the objective medical evidence to subjective complaints. They looked at the surveillance. They had the opportunity, at least they hoped, to talk to the attending physician, although the attending physician refused to return the calls. They're in the best position to make a determination as a whole, of the whole person analysis of the functional capacity of this individual. Second, the functional capacity evaluation by Blue, Mr. Blue, that was a hands-on evaluation. It would be nice if Mr. McCool had allowed the functional capacity evaluation to stretch for four to eight hours like we wanted, but Mr. McCool said, no, I'm only going to show up for one hour because you're not paying me to show up. I think that we did everything that we could do, we meaning Lina, to try to evaluate this case, and in light of the fact that the plaintiff has the burden of proof, I think that what we did was certainly enough to do it. There were mild objective findings in the record. The attending physician didn't support significant limitations. Even Dr. Grossman, the workers' comp physician, says that he could sit less than frequently. He only says that once, and that was during the time the claim was paid, so it's not even time relevant. There were unsuccessful attempts by Lina to get clarity. The surveillance postdated that comment by Dr. Grossman. Mr. McCool did not seek approved treatment from doctors that his own doctor sent him to, treatment that was approved by workers' comp. So, in short, we're not seeing what we expect to see when we have a very young person who's incapable of even sedentary work. Lina didn't see it, and the district court judge didn't see it, and that's why judgment was entered in favor of Lina. We gave him every opportunity, Your Honor, to prove his claim. We went above and beyond, and he didn't do it. I have no more questions. If you have no more argument, do you have more argument, Mr. McGuire? Your Honor, I'd like to take the rest of my time to respond to any questions that Judge Rawlinson or Judge Corman may have on the case. I'd be happy to address those. I don't have any questions. In that case, Your Honor, I'll rest at this point. Thank you very much for your time. Thank you, counsel. Rebuttal? Yes, Your Honor, thank you. Let me just say a few things about Mr. McGuire's comments. This business about the plaintiff refusing to take a four- or eight-hour FCE, that's a scam, because if they wanted him to take that, if Lina wanted him to take that four- to eight-hour FCE, all they had to do was say, if you don't cooperate and do what we ask you to do, we're going to cut you off for that reason, and that's a damn good reason to cut him off. It's in the plan and in the policy. So they could have cut him off, but they said, okay, you take the two hours. And now they're using it to get back at him, you know, saying, oh, you asked for two hours, and we gave you two hours, and you're a bad guy for asking for two hours. Well, they didn't have to give it to him. It's their decision to give it to him. And with all of this information that they had, that he didn't take the four-hour or eight-hour FCE, that he didn't see doctors at workers' comp, said he could see real quickly, that the film shows X, Y, and Z, all of these factors that Mr. McGuire talked about, these were all in front of Dr. Chung. Dr. Chung saw everything, and the only thing she came up with is this guy has frequent sitting. So you're in the back in the same situation where the doctor that supposedly saw everything and has the best view of everything still limits him to frequent sitting between two and a half and five and a half hours, okay? As far as the judge reviewing all of the evidence, the trial judge reviewing all of the evidence and coming up with his decision, this court in Hoffman v. SAG 571, Fed Appendix 588 at page 591, talks about a judge who came up with his medical opinion and ruled for the defendant. Is that the best case you got, that Fed Appendix case? No, it's a case that happened to come to mind because it was my case. Well, but if it's a Fed Appendix case, there's no precedent in this court. Okay, well, but the logic of it is that a judge is not a doctor and he doesn't have medical training. He needs somebody to put all that stuff together for him in an opinion. And the people that put it together for him in an opinion said that my client has sitting ability between zero and 5.5 hours in an eight-hour day. And those are the doctors. Those are the views of the doctors. The best doctor that they got going for him is Dr. Chung, and she limits it between two and a half and five and a half hours. Also, I must say that I'm kind of shocked to hear that Dr. Chung and the LENA doctors, the record review doctors, have the best view of the whole scene. All the case law that I've seen is that the treating and examining doctors are the ones that have the best view of everything. Before you get carried on, I didn't even hear that be the argument. The argument is that is evidence in the record, and on clear error review, that's evidence we can't just throw away. That was the argument. Okay, let's say you would ask somebody, I need somebody to play basketball for me. Do you have anybody that's six feet tall? And the guy says, I got somebody between five and seven feet. How about him? I mean, what would that mean to you? It means nothing. It doesn't tell you anything. That's what they're telling you here. We need somebody that can sit for four hours. Well, we got somebody over here who can sit between two and a half and five and a half hours. That's not evidence that he can sit for four hours. All right, counsel, you've consumed your time. We understand your argument. Thank you to both counsel for your arguments in this case. The case of McCool v. Life Insurance Company of North America is submitted for decision by the court. The first case on calendar, Burnaby v. Williams v. Barr, has been submitted on the briefs. The next case on calendar for argument is E.R.E. Ventures v. David Evans & Associates.
judges: Rawlinson, N.R. Smith, Korman